IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02343-MSK-MEH

CHERYL ARABALO,

      Plaintiff,

v.

CITY OF DENVER, COUNTY OF DENVER, through its elected officials, the Denver City Council,
ASHLEY KILROY, in his official capacity as Acting Safety Manager for the City and County of Denver, and
CAPTAIN GUTIERREZ,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendant Captain Gutierrez's Motion to Dismiss Plaintiff's Third Amended Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [filed November 28, 2012; docket #112]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation.  (Docket #114) The matter is fully briefed, and the Court has determined that oral argument would not materially assist its adjudication of the Motion.  For the reasons that follow, the Court respectfully RECOMMENDS that Defendant Gutierrez's Motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the

**BACKGROUND**

I.  **Procedural Posture**

At the outset, the Court recognizes considerable disagreement between the parties regarding Defendant Gutierrez's attachment of documents to his Motion to Dismiss.  The Court can consider evidence relevant to jurisdiction under Rule 12(b)(1) without converting it to a motion for summary judgment.  *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) ("In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not covert the motion into a Rule 56 motion.").  However, I find it unnecessary to do so in deciding this Motion.

For purposes of the Court's Rule 12(b)(6) analysis, the Court accepts as true all allegations of fact (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by Plaintiff  in her Third Amended Complaint [docket #109], pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In the interest of brevity, the Court recounts only those facts which are relevant to the pending Motion to Dismiss.  The following facts rely solely on the Third Amended Complaint and Plaintiff's response brief and not on any other source.

II.  **Allegations of Fact**

A.    General Background

Plaintiff's claims arise from her employment with the Denver Sheriff Department ("the Department") from August 3, 1992, through her termination on March 16, 2012.  During her time with the Department, Plaintiff was responsible for, *inter alia*, overseeing inmates in the Denver County Jail.  She also devoted time to non-profit activities, including the Denver Sheriff's Foundation ("the Foundation").  The purpose of the Foundation was to provide financial assistance

---

Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

to the Department's officers, employees, and their families when needs arose due to death, disability, illness, injury, or other tragedies.

Defendant Captain Gutierrez served with Plaintiff on the Foundation's Board of Directors ("the Board") as a member and treasurer. In this capacity, Gutierrez was responsible for filing federal and state tax returns, keeping financial records, ensuring financial audits were properly conducted, and overseeing other matters as set forth in the Foundation's bylaws. Deputies William Currat and Tyler Mazotti also served as members of the Board.

B. Sexual Harassment Allegations

Following the broadcast of a news story titled "Sex, Lies, Video Tapes and DPD" on December 23, 2008, Plaintiff began receiving "cat calls" from inmates at the Denver County Jail. Plaintiff believes the inmates erroneously linked her to the story due to reports that a person named "Arabalo" was involved in the sex tapes. Although Plaintiff attempted to discipline the inmates responsible for the offensive behavior, she was unable to manage the situation alone. On several occasions, she complained to her supervisors and other Department officials about the ongoing sexual harassment. Despite these complaints, Plaintiff alleges that the Department "did nothing" to abate the inmates' behavior. Plaintiff was, however, transferred to the Pre-trial Arraignment Detention Facility at the Denver City Jail ("the jail").

According to Plaintiff, sexual misconduct at the jail was not limited to the inmates. On or about October 11, 2009, Plaintiff alleges that Denver Sheriff Deputies Currat and Mazotti sexually assaulted and raped her at her home. Currant and Mazotti are social acquaintances of Defendant Gutierrez and fellow Foundation Board members. Although Gutierrez had allegedly made sexual comments and gestures toward Plaintiff over the course of her employment with the Department, these comments and gestures became more frequent following the rape.

With respect to Defendant Gutierrez, Plaintiff asserts that on one or more occasions, he asked her to "shut the door, sit on his lap, come around his desk, and unbutton her blouse." (Docket #109 at ¶ 41.)  Plaintiff recalls something similar occurring on August 26, 2010, while Plaintiff was working at the Denver County Jail and while Defendant Gutierrez was briefly serving as the Acting Chief of the jail.  (*Id*. at ¶¶ 47, 50.)   At that time, according to Plaintiff, Gutierrez indicated he would give her "a big surprise" if she lifted her shirt and sat on his lap.  (*Id*. at ¶ 50.)  The following day, Plaintiff called Gutierrez to discuss Foundation business.  In the presence of other Department employees, Gutierrez asked Plaintiff what she was wearing.

Prior to these incidents involving Plaintiff, Chief Elias Diggins informally counseled Defendant Gutierrez on several occasions regarding his failure to abate crude banter with and among his subordinates.  Chief Diggins advised Gutierrez to become "more professional" with subordinates.  However, Chief Diggins did not formally discipline Gutierrez or report his conduct to the Department at that time.

C.     Sexual Harassment Investigation

Plaintiff reported Defendant Gutierrez's behavior to Colorado Civil Rights Division ("CCRD") Investigator Kimberly Roy in October 2010.  Approximately six months prior, in April 2010, Plaintiff filed a complaint with the CCRD regarding sexual harassment.  She also filed a complaint with the Equal Employment Opportunity Commission in June 2010.

News of Plaintiff's October 2010 complaint apparently reached Chief Diggins. When Chief Diggins confronted Defendant Gutierrez about Plaintiff's allegations, Gutierrez admitted they were true.  Shortly thereafter, Gutierrez resigned as treasurer of the Foundation.  On November 12, 2010, Plaintiff was ordered to participate in the Denver Sheriff's Department Internal Affairs investigation regarding the alleged harassment.  Additionally, her attorney received a demand that she turn over

any recordings of Gutierrez harassing her.  The letter further advised Plaintiff that she may be disciplined if she had made such recordings in the facility.

As part of the Internal Affairs investigation, Defendant Gutierrez sat for a formal interview on January 13, 2011.  During the interview, Gutierrez acknowledged that he had made various sexual comments to Plaintiff.  Gutierrez ultimately received a 30-day suspension for his misconduct.

D.      Plaintiff's Alleged Misconduct and Termination

In May 2010, Plaintiff became the subject of an internal investigation regarding a bake sale and use of vacation time.  Several months later, in July or early August 2010, Plaintiff was informed that she was also under investigation for an alleged false report ("the Report Investigation").  As a result of the Report Investigation, Plaintiff was suspended for 70 days without pay beginning on February 14, 2011.

Plaintiff was accused of further misconduct on January 13, 2011, during Defendant Gutierrez's interview with Internal Affairs regarding the alleged sexual harassment.  Specifically, Gutierrez claimed that Plaintiff had misappropriated Foundation funds. During Plaintiff's suspension arising from the Report Investigation, Gutierrez submitted allegations of Plaintiff's embezzlement to the Denver Police Department. As a result of the allegations, grand jury proceedings were held for several weeks.  At the conclusion of those proceedings, the grand jury elected not to issue an indictment, and no charges were filed.

Plaintiff received significant attention from the media in May 2011.  One of the reports involved allegations that the Foundation was under investigation.  The other was initiated by Richard Rosenthal, the City's Former Independent Monitor.  Mr. Rosenthal released a statement regarding Plaintiff's suspension in which he identified Plaintiff by name and opined that she should

be demoted due to her lack of supervision and lying.

On May 23, 2011, Plaintiff reported to work at 9:00 a.m. as set forth in her disciplinary letter. She was immediately placed on investigatory leave. Plaintiff remained on investigatory leave through March 16, 2012, when Defendant Ashley Kilroy terminated Plaintiff's employment.

## III.   Procedural History

Plaintiff initiated this action on September 6, 2011, alleging sexual harassment, sex discrimination, and retaliation by the Denver Sheriff's Department and several of its officers. Attorney Samuel Trapp represented Plaintiff initially. During Mr. Trapp's representation of Plaintiff, Plaintiff obtained discovery from Defendants through interrogatories and requests for production. Following a dispute related to Plaintiff's deposition, Plaintiff terminated Mr. Trapp on September 26, 2012, and hired Samantha Halliburton to represent her in this action.

Shortly after retaining Ms. Halliburton, Plaintiff moved to reopen discovery and to file a third amended complaint. At a hearing on Plaintiff's motions, the Court observed that the proposed third amended pleading contained several contradictory assertions, and that it would not be accepted as filed. Although the Court ultimately granted Plaintiff leave to amend, it cautioned Plaintiff that asserting claims against Defendant Gutierrez in his individual capacity would likely precipitate a motion to dismiss and corresponding motion to stay. The Court's prediction was correct.

Plaintiff filed her Third Amended Complaint on November 14, 2012, asserting among other claims, three claims against Defendant Gutierrez: (1) a Section 1983 claim for violations of the Fourteenth Amendment against Gutierrez in his individual and official capacities; (2) a common law claim for defamation against Gutierrez in his individual capacity; and (3) a common law claim for outrageous conduct against Gutierrez in his individual capacity. Gutierrez responded by filing the pending Motion to Dismiss on November 28, 2012. (Docket #112.) Concurrent with the Motion

to Dismiss, Gutierrez moved to stay the action pending the District Court's determination of qualified immunity.  This Court granted the motion to stay in part, imposing a stay of discovery with respect to Gutierrez but allowing discovery to go forward with respect to the remaining Defendants. (Docket #124.)

In his Motion to Dismiss, Defendant Gutierrez asserts an entitlement to qualified immunity with respect to Plaintiff's constitutional claim, and under the Colorado Governmental Immunity Act ("CGIA") he asserts immunity regarding Plaintiff's tort claims.  Plaintiff's response, filed December 19, 2012, contends that neither form of immunity shields Gutierrez.  Gutierrez filed his reply in support of the Motion to Dismiss on January 4, 2013.  No party has requested oral argument, and the Court determines that it is not necessary to facilitate its resolution of the Motion to Dismiss.

## LEGAL STANDARDS

### I.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.

Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*  271 F.3d at 1225 (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."  *Id.*

## II.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011).

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC,* 656 F.3d at 1215.  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

Further, Defendant Gutierrez challenges the sufficiency of Plaintiff's Section 1983 claim under a qualified immunity argument; this question of law should be resolved "at the earliest possible stage of litigation." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).  To withstand a motion to dismiss, the allegations of the complaint "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (footnote omitted).  Although "[t]echnical fact pleading is not required . . . the complaint must still provide enough factual allegations for a court to infer potential victory." *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (internal quotation marks and citations omitted).

## ANALYSIS

### I.    Tort Claims

As I note above, Claims 6 and 7 of the Third Amended Complaint assert, respectively, the common law torts of defamation and outrageous conduct against Defendant Gutierrez.  These claims against a public employee are barred under the CGIA when they "arise[] out of an act or omission of such employee occurring during the performance of his duties and within the scope of his

employment." Colo. Rev. Stat. § 24-10-118(2)(a) (2011). The CGIA requires, for a suit falling within its scope, "any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment . . . [to] file a written notice" with either the Attorney General or with the relevant public entity within 180 days from the time the injury is discovered. *Id.* § 24-10-109(1). Such notice is not merely a formality, but rather "a jurisdictional prerequisite to any action." *Id.* Failure to comply with the notice requirement "shall forever bar any such action." *Id.*

The parties do not dispute that Plaintiff did not file a written notice in compliance with the CGIA. Nor does Plaintiff contest that, for claims falling within the scope of the CGIA, failure to comply with the written notice requirement is fatal. What Plaintiff does assert, however, is that Gutierrez was outside the course and scope of his official duties when he made the allegedly tortious allegation of embezzlement against Plaintiff. Relying on the allegations of Plaintiff's Third Amended Complaint and relevant case law, the tort claims must be dismissed.

Plaintiff alleges in her Third Amended Complaint and in her response to the Motion to Dismiss that Gutierrez made the offending statement to the Denver Sheriff's Department Internal Affairs investigators during a formal interview concerning Plaintiff's complaint alleging sexual harassment against Gutierrez. (Docket #109 at ¶ 62; docket #122 at 16.) Internal affairs units clearly operate within the jurisdiction and authority of a sheriff's department. *Freedom Colorado Information, Inc. v. El Paso County Sheriff's Dept.*, 196 P.3d 892, 900 (Colo. 2008). "The purpose of a criminal justice agency's internal affairs investigation, resulting in a document that is not the record of 'official action,' is to assess the performance of law enforcement officers in carrying out their duties . . . ." *Id.* at 901. Indeed, the Colorado courts have expressly referred to witness statements, interviews of police officers, and submission of other documents that find their way into

10

an internal affairs investigation file, as relating to "a police officer's discharge of his or her official duties." *American Civil Liberties Union of Colorado v. Whitman*, 159 P.3d 707, 711 (Colo. App. 2006). The Colorado state courts have given other indications that the questioning of a police officer in an internal investigation is, as a matter of law, within the course and scope of the questioned officer's official duties. *E.g.*, *People v. Schupper*, 140 P.3d 293, 297 (Colo. App. 2006) (citing *Melendres v. State,* 739 So.2d 1237 (Fla. Ct. App. 1999) for the proposition that a "sworn statement given during a police internal affairs investigation is given during an official proceeding"). *Cf. Brumfield v. Sanders*, 232 F.3d 376 (3d Cir. 2000) (statements made by federal correctional officer's coworkers during investigation of officer by the Office of Internal Affairs of the Federal Bureau of Prisons were within the scope of coworkers' employment under Pennsylvania law, and thus, state tort claims by officer against coworkers were barred, even if statements were motivated by personal animosity and even if false).

The fact that Plaintiff alleges in her Third Amended Complaint (¶ 143) that, contrary to the clear authority cited above, Gutierrez's statements were made while acting outside the course and scope of his official job duties, does not alter this result. The determination of whether an actor was within the course and scope of his employment is a legal issue. *See Price v. Industrial Claim Appeals Office of State of Colo.*, 919 P.2d 207, 210 (Colo. 1996); *Stuart v. Frederick R. Ross Inv. Co.* 773 P.2d 1107, 1110 (Colo. App. 1988). Conclusory allegations of law, such as Plaintiff's allegation concerning scope of employment, are insufficient to defeat a motion to dismiss. *Medical Supply Chain, Inc. v. General Elec. Co.*, 144 F. App'x 708, 713 (10th Cir. 2005) ("Since [plaintiff] makes no well-pleaded factual allegations that would support its conclusory legal allegation . . . we see no reason to disturb the district court's conclusion that [plaintiff] failed to state a claim . . . ."); *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1070 (D. Colo. 1991). *See also*

*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998).  If the facts as alleged by Plaintiff in the Third Amended Complaint place Defendant Gutierrez squarely within the scope of his employment, then Plaintiff has not stated plausible, exhausted tort claims against him.

The case of *Harris v. City of Colorado Springs*, 867 P.2d 217 (Colo. App. 1993) is instructive.  In that case, a police officer was questioned during an internal affairs investigation concerning off-duty conduct.  *Id.* at 218.  During his interview, the officer was ordered to answer additional questions in a polygraph test.  *Id.*  He declined to take the polygraph.  *Id.*  The police department terminated him for violating that order.  *Id.*  He then filed a declaratory judgment action alleging that polygraph examinations could be ordered only when off-duty conduct  was "specifically, directly, and narrowly related to the performance of a police officer's official duties." *Id.*  The district court granted summary judgment for the police department.  In affirming, the court of appeals held that a police officer's official duties include off-duty conduct that would impact "an individual's fitness for public service." *Id.* at 219.

Thus, even if Gutierrez could possibly have been viewed as "off duty" when he was formally interviewed by the Denver Sheriff's Department Internal Affairs Division and responded to questions concerning Plaintiff's formal complaint of sexual harassment, his participation in an interview about matters that, under Plaintiff's own claims, involve on-duty allegations of sexual harassment, was, as a matter of law, "the performance of a police officer's official duties." *See id.* at 218-19.

Because Plaintiff's allegations establish that Gutierrez's conduct in being interviewed by the Sheriff's Department Internal Affairs division was within the scope of his employment, and because

Plaintiff did not exhaust her tort claims against Gutierrez, they must be dismissed.

**II.      Section 1983 Sexual Harassment Claim**

      A.      Qualified Immunity

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

For purposes of dismissal under Fed. R. Civ. P. 12(b)(6), a right is clearly established if, at the time of the alleged violation, "the contours of the right were sufficiently clear that a reasonable officer would understand that what he [or she] is doing violates that right." *Christensen v. Park City*

*Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009) (citations and internal quotations omitted). In the Tenth Circuit, "[a] plaintiff can demonstrate a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Id.* This standard is not satisfied simply by identifying generalized constitutional principles. *Kerns v. Bader*, 663 F.3d 1173, 1182 (10th Cir. 2011). Although a plaintiff need not present a case "directly on point," a district court may not deny immunity "unless existing precedent has placed the statutory or constitutional question *beyond* debate." *Id.* (emphasis in original).

B.    Analysis

I do not believe Plaintiff's Section 1983 claim as pleaded states a plausible claim of a constitutional violation because, based on Tenth Circuit precedent, I believe the allegations do not pass muster.

Obviously, Plaintiff has a clearly established right to be free from sexual harassment that reaches the level of being "sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012). This right was clearly established at the time of the conduct alleged in this case. *See Fye v. Oklahoma Corp. Comm'n*, 175 F. App'x 207, 210 (10th Cir. 2006) (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir. 1992)). However, accepting all of Plaintiff's allegations as true, the Third Amended Complaint does not state a plausible claim for actionable sexual harassment claim under Tenth Circuit precedent.[2]

---

[2]Some of the precedent discussed herein arises in the Title VII context. "In general, the same standards govern intentional discrimination claims under Title VII . . . and § 1983." *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012); *Andersen v. Rochester City Sch. Dist.* 481 F. App'x 628, 629, 2012 WL 1632581 n.1 (2d Cir. 2012); *Thompson v. City of Lansing*, 410 F. App'x 922, 934 (6th Cir. 2011); *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011). *See also Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (same for race discrimination claim).

First, Plaintiff may recover directly against Gutierrez under Section 1983 only if he "either (1) was her supervisor or (2) exercised state authority over her." *Maestas v. Lujan*, 351 F.3d 1001, 1012 (10th Cir. 2003). The Third Amended Complaint alleges that Gutierrez was in an acting supervisory capacity on only two days, August 26-27, 2010. (Docket #1 at ¶47.) At all other times Gutierrez was a peer of Plaintiff. Even if Gutierrez was superior to Plaintiff in the hierarchy of the nonprofit Foundation, that would be insufficient to qualify as an exercise of state authority over Plaintiff.

The only alleged harassing acts on the two days that Gutierrez was an acting supervisor were the "big surprise" and "what are you wearing" comments. Comments made or actions taken at times that Gutierrez was not Plaintiff's supervisor are not actionable under Section 1983. *Noland v. McAdoo*, 39 F.3d 269, 272 (10th Cir. 1994). I do not believe that these two comments come close to being sufficient to sustain a Section 1983 harassment claim against Gutierrez.

Second, even if all of Gutierrez's alleged statements are considered, I do not believe that they state a plausible claim for constitutionally impermissible sexual harassment. The Tenth Circuit recently noted that "the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris*, 666 F.3d at 664. In reading the extensive case law on this subject in the Tenth Circuit, I do not believe the alleged sexual conduct in this case can qualify as sufficiently severe or persuasive to fall within any set of facts for which the Tenth Circuit has found a viable sexual harassment claim.

In conducting my analysis of the egregiousness of any alleged sexual harassment/hostile environment claim, I am to review "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" *Id.* (citations omitted). Here, the "sit on my lap and unbutton your shirt" and "sit on my lap and lift up your shirt" requests were infrequent at best (Plaintiff alleging that there were "several occasions" of the former and one instance of the latter). There was also just one instance of the "what are you wearing" comment. As to the severity of the harassment, as Defendant notes, these are comments only, without any allegation of physical touching at any time. The comments are offensive, boorish, and juvenile, but I am constrained by Tenth Circuit precedent from finding them severe enough to warrant a Section 1983 claim. *See id.* at 664. The comments are not physically threatening and, although potentially humiliating, they fall within the Tenth Circuit's "mere offensive utterance" scenario. *See id.* I also cannot say, under the facts alleged by Plaintiff, that these statements unreasonably interfered with her work performance using an objective, reasonable person standard. *Id.* "A plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of . . . sporadic . . . slurs. . . . Instead, there must be a steady barrage of opprobrious . . . comments." *Id.* at 666. (citations omitted). Plaintiff has not pleaded a steady barrage, but only isolated instances of boorish conduct. Indeed, in *Morris*, the court relied on cases from other circuits which addressed similarly bad verbal conduct *and touching*, and yet found no violation. *Id.* (noting that isolated comments and touching, and isolated touchings, leers, or rude comments, do not suffice to constitute actionable harassment).

Some specific case authority finding no violation would be helpful here. In *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997), the offending supervisor asked the plaintiff to unbutton the top button of her shirt, and also put his arm around her, looked down her dress, and told her that he had to "get it when [he] can." And in *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998), the supervisor (1) asked the plaintiff whether women have wet dreams;

(2) arranged to be in the same room with plaintiff while on travel, leaving it to the plaintiff to correct the situation; (3) took her to a Hooter's restaurant; (4) saw her bra strap showing on one occasion and told her he liked it that way; (5) asked her what she was wearing under her dress; (6) talked about buildings that were shaped like women's breasts; (7) often stood by her and stared at her in the workplace; (8) on one occasion leaned against her and tried to look down her blouse; and (9) needlessly touched her on numerous occasions over a long period of time. *See also Hearron v. Voith Indus. Services, Inc.*, 483 F. App'x 453 (10th Cir. 2012) (citing with approval *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir. 1999), which held that co-worker's sexual harassment did not render employee's work environment objectively hostile, where co-worker made comment about the color of plaintiff's nipples and the size of her thighs, attempted to look down her shirt, touched plaintiff's arm several times and rubbed his hand from her shoulder to her waist, and on two occasions told her to sit on his lap).

Upon comparing the Plaintiff's allegations of sexual harassment with the more egregious facts detailed above,  I find that Plaintiff's claim of sexual harassment does not meet the severe and pervasive standard required by the Tenth Circuit.  This is not to say that these allegations, combined with the others made by Plaintiff in the Third Amended Complaint, are not sufficient to establish a triable claim against the City of Denver for a violation of Title VII under a sexual harassment theory, which is Plaintiff's first claim in this case.  However, I do not believe they are sufficient for a stand-alone Section 1983 claim against Gutierrez.  Therefore, the Court recommends the District Court dismiss Plaintiff's Section 1983 claim against Defendant Gutierrez.

C.       Leave to Amend

Plaintiff's allegation that Defendant Gutierrez made offensive comments "on one or *more* occasions" would typically prompt me to consider and ultimately recommend leave to provide a

17

more detailed account of the events in an amended pleading. However, the procedural history underlying the pending Motion is atypical in several ways. First, Plaintiff has already conducted significant discovery regarding Defendant Gutierrez's conduct. Counsel for the parties discussed this discovery in depth at a motion hearing I held in this case on November 2, 2012. (Docket #103.) In addition to Plaintiff's discovery efforts, Plaintiff has also received numerous and meaningful opportunities to amend her complaint. At the November 2, 2012 hearing, I discussed with Plaintiff's counsel various problems with the proposed third amendment complaint and observed that it would likely draw a motion to dismiss. In granting Plaintiff leave to amend, I gave Plaintiff's counsel a rare extension, through and including November 14, 2012, within which to perfect and file the pending Third Amended Complaint. Finally, Gutierrez has argued strongly in his briefs that Plaintiff has not pleaded sufficient facts to move forward on a Section 1983 claim against him. In her response brief, Plaintiff does not contend that there are additional allegations of specific acts of sexual harassment that she could bring in any additional amended complaint.

In light of Plaintiff's various opportunities to discover, allege or plead a more specific account of sexual harassment, the Court finds that further leave to amend would not remedy the deficiencies described above.

## **CONCLUSION**

As set forth herein, the Court finds that Plaintiff's tort claims are barred by the CGIA because Defendant Gutierrez acted within the scope of his employment in reporting Plaintiff's alleged misconduct during his Internal Affairs interview and Plaintiff has admittedly failed to meet the 180-day notice requirement. Additionally, the Court finds that Plaintiff's Section 1983 claim of sexual harassment fails as a matter of law because Defendant Gutierrez's conduct, as described in Plaintiff's Third Amended Complaint, was not sufficiently severe or pervasive to violate the

Constitution.    Therefore,  the  Court  respectfully  RECOMMENDS  that    Defendant  Captain

Gutierrez's Motion to Dismiss Plaintiff's Third Amended Complaint Under Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) [filed November 28, 2012; docket #112] be **GRANTED** as stated

herein.

     Dated at Denver, Colorado, this 1st day of March, 2013.

     BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge